# United States Court of Appeals
## For the First Circuit

No. 07-2794

UNITED STATES OF AMERICA,

Appellee,

v.

SAMNANG AM, a/k/a Sammang Am

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel,  U.S. District Judge]

Before

Boudin, Stahl, and Lipez, Circuit Judges.

Walter H. Underhill, by Appointment of the Court, for appellant.
Samnang Am on brief pro se.
Lisa M. Asiaf, Assistant U.S. Attorney, with whom Michael J. Sullivan, United States Attorney, was on brief for appellee.

April 21, 2009

**STAHL**, **Circuit Judge**.  Defendant-appellant Samnang Am appeals both his conviction and sentence under the felon-in-possession statute, 18 U.S.C. § 922(g)(1).  Am's primary argument is that the district court erred in denying his motion to suppress a firearm and ammunition seized incident to a Terry stop.[1]  He additionally claims that the court was in error when it found that one of his prior convictions qualified as a predicate under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(1).  Finding no error, we affirm both the conviction and subsequent sentence.

## I.

We relate the facts "as the trial court found them, consistent with record support."  United States v. Ruidíaz, 529 F.3d 25, 27 (1st Cir. 2008) (quoting United States v. Lee, 317 F.3d 26, 30 (1st Cir. 2003)).  On May 26, 2005, Sergeant Michael Vail and Officer Michael Kmiec of the Lynn Police Department were patrolling in a marked police cruiser a high-crime area of Lynn, Massachusetts, where there were frequent shootings and where the Department was conducting increased patrols as part of its ongoing gang suppression strategy.  At approximately 7:00 p.m., the uniformed officers observed Am, who Vail recognized, walking alone

---

[1] Am also seeks to suppress statements he allegedly made to the officers during the stop.  The district court found as fact that the statements were not actually made and that, in the alternative, the statements were not subject to suppression because Am was not the subject of a custodial interrogation when the statements were claimed to have been made.

-2-

down Essex Street.  Am then on probation, a fact Vail knew, was on his way to a mandatory anger management course, a term of his probation.  Upon seeing Am, Vail turned the cruiser around and without using the take down lights or siren, pulled up behind Am.

Just minutes before the officers observed Am, Detective Robert Hogan of the Lynn Police Gang Unit had informed Vail that Am was a suspect in a recent shooting.  Vail had previously interacted with Am roughly twenty to thirty times, the encounters varying in nature with twenty percent resulting in a pat-frisk.  Although none of Vail's prior searches had yielded a weapon, Vail had interviewed Am in 2003 after Am was arrested with a rifle on his person, and Vail knew that Am had been a suspect in several prior shootings.  Vail also was aware that Am was a leader of the Oriental Street Boys, a Massachusetts gang affiliate of the Los Angeles-based Crypts.  Further, Vail was familiar with Am's reputation for carrying a weapon and knew that Am was prohibited from doing so by the terms of his probation.  Importantly, Vail never before had seen Am walking alone and surmised that he would not do so, in rival gang territory, without being armed.[2]

After pulling approximately five to fifteen feet behind Am, both officers exited the vehicle.  Am did an "about face,"

---

[2] Indeed, at the suppression hearing, Vail testified that he said to Kmiec, "There's no way he would be walking down Essex Street without a gun on him," and Am conceded that during his previous encounters with Vail, "It's never me walking like this by myself."

began walking toward the officers, and in a quick motion, put his right hand into his right-hand pants pocket. Vail immediately ordered Am to take his hand out of his pocket, and Am complied.[3] Vail and Kmiec put Am against the hood of the police cruiser, pat-frisked him, found a gun in his left front pocket, and then arrested him. Am filed a motion to suppress evidence seized from the Terry stop on the basis that the stop was not supported by reasonable suspicion and thus violated the Fourth Amendment. After the district court denied Am's motion, Am filed a conditional guilty plea.

Prior to and during the sentencing hearing, Am objected to his Presentence Report which concluded that he was an armed career criminal because he had been convicted for a violation of 18 U.S.C. § 922(g) and because he had at least three prior convictions for violent felonies. See 18 U.S.C. § 924(e)(1); U.S.S.G. § 4B1.4. Specifically, Am argued that a 1997 juvenile conviction for assault with a dangerous weapon, a knife, did not qualify as an ACCA predicate because the court documents from the 1997 conviction did

_____

[3] At the suppression hearing, the parties disputed whether Am made certain statements, such as "I'm strapped," after the officers told him to take his hand out of his pocket. The district court heard testimony from Vail, Kmiec, and Am and examined both Kmiec's police report, transcribed some hours after the incident had occurred, and Am's deposition, signed more than a year after the encounter. The court concluded that time had clouded the minds of the parties and ultimately determined that the statements were not made. For purposes of deciding whether the court properly admitted the firearm and ammunition, it is not necessary to determine whether the statements were or were not made.

not make clear whether Am had pled guilty to assault by means of a dangerous weapon or, more specifically, to assault by means of a dangerous weapon, a knife.  The court rejected Am's argument and sentenced him to fifteen years imprisonment with three years of supervised release.

## II.

### A. The Motion to Suppress

Am challenges the denial of his motion to suppress the evidence seized during the pat-frisk.  Am first argues that the district court's denial was improper because the Lynn officers lacked reasonable suspicion to conduct a Terry stop.  Terry v. Ohio, 392 U.S. 1, 19-20 (1968).  Alternatively, he contends that the officers exceeded the bounds of a permissible Terry stop, constituting a de facto arrest in the absence of probable cause.

We review the district court's factual findings for clear error and its legal conclusions de novo.  Ruidíaz, 529 F.3d at 28.  "A clear error exists only if, after considering all the evidence, we are left with a definite and firm conviction that a mistake has been made."  United States v. Barnes, 506 F.3d 58, 62 (1st Cir. 2007) (quoting United States v. McCarthy, 77 F.3d 522, 529 (1st Cir. 1996)).  This "[d]eference to the district court's findings of fact reflects our awareness that the trial judge, who hears the testimony, observes the witnesses' demeanor and evaluates the facts

first hand, sits in the best position to determine what actually happened."  United States v. Young, 105 F.3d 1, 5 (1st Cir. 1997).

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."  U.S. Const., amend. IV.  Its primary purpose is to protect against "arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals."  I.N.S. v. Delgado, 466 U.S. 210, 215 (1984) (quoting United States v. Martinez-Fuerte, 428 U.S. 543, 554 (1976)).

In Terry v. Ohio, the Supreme Court counseled that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest."  392 U.S. at 21.  Thus, a police officer is permitted to make a brief investigatory stop of an individual if the officer has reasonable suspicion that criminal activity may be afoot, United States v. Arvizu, 534 U.S. 266, 273 (2002), and to frisk an individual if the officer has reasonable suspicion that the person is armed and dangerous, Terry, 392 U.S. at 27.  See id. at 30 (permitting a limited search to discover weapons "where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot.").  The so-called Terry stop "lies somewhere between a

consensual encounter and a full-blown custodial arrest," United States v. Harris, 218 Fed. Appx. 525, 527 (7th Cir. 2007), such that reasonable suspicion "requires more than a mere hunch but less than probable cause," Ruidíaz, 529 F.3d at 29.

Under our "familiar two-pronged inquiry," we evaluate "whether the officer's action was justified at its inception, and whether the action taken was reasonably related in scope to the circumstances which justified the interference in the first place." United States v. Taylor, 162 F.3d 12, 18 (1st Cir. 1998) (quoting Terry, 329 U.S. at 20). To satisfy the first prong, we decide whether the police officer can "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." United States v. Kimball, 25 F.3d 1, 6 (1st Cir. 1994) (quoting Terry, 392 U.S. at 21); see also Terry, 392 U.S. at 27 ("[I]n determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience."). To determine whether a pat-frisk is justified under the second prong of our analysis, we consider the totality of the circumstances. United States v. Cortez, 449 U.S. 411, 417 (1981); see United States v. Bayless, 201 F.3d 116, 133 (2d Cir. 2000) ("[T]he court must evaluate those circumstances 'through the eyes of a reasonable

-7-

and cautious police officer on the scene, guided by his experience and training.'") (quoting United States v. Oates, 560 F.2d 45, 61 (2d Cir. 1977)).

We turn first to the inception of the Lynn officers' stop and note that even innocuous facts, which when taken alone may not be "sufficient to create reasonable suspicion[,] . . . may in combination with other innocuous facts take on added significance." Ruidíaz, 529 F.3d at 30 (citation omitted).  Here, the officers articulated six factors that led them to believe Am might be engaged in criminal activity.  We find that five factors articulated by the officers, even excluding the tip from Hogan, were sufficient to show that the officers possessed the reasonable suspicion necessary to conduct a Terry stop of Am.

Among the factors taken into account by Vail and Kmiec was Am's presence in a high-crime area.  While location on its own is insufficient to create reasonable suspicion, it "is clearly a consideration that a police officer may use to decide to make a Terry stop."  Kimball, 25 F.3d at 7; see also Illinois v. Wardlow, 528 U.S. 119, 124 (2000) ("[O]fficers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation.  Accordingly, we have previously noted the fact that the stop occurred in a 'high crime area' among the relevant contextual considerations in a Terry analysis."); United States v.

-8-

Stroman, 500 F.3d 61, 64 (1st Cir. 2007). Am argues that location was not a permissible consideration because the area in which he was stopped had no connection with the type of criminal activity in which he was engaged. We disagree that there was no such connection. Given his familiarity with Am, Vail believed that it was uncharacteristic for Am to walk unaccompanied in the area. The stop occurred in a location of known gang violence based on suspicion that Am was engaged in criminal activity related to his gang membership, namely carrying a weapon for protection from rival gangs. Compare Kimball, 25 F.3d at 6-7 (holding that reasonable suspicion existed to justify the inception of the search where the officer was aware of the defendant's criminal history, the defendant was spotted in a school parking lot, and the officer knew that a number of schools had been burglarized in the area) with United States v. Monteiro, 447 F.3d 39, 47 (1st Cir. 2006) (finding search unconstitutional where a co-defendant's gang involvement and prior arrest were not linked to reliable information about the potential criminal activity which the officers were investigating).

The officers also were aware of and considered Am's known gang affiliation, past criminal conduct, proclivity to carry a firearm, and probationary status. While any of these four factors standing alone could well be insufficient to warrant a Terry stop, the combination provided a reasonable basis to conduct an investigatory stop of Am. See Ruidíaz, 529 F.3d at 30; United

-9-

States v. Feliciano, 45 F.3d 1070, 1074 (7th Cir. 1995) ("Knowledge of gang association and recent relevant criminal conduct, while of doubtful evidentiary value in view of the strictures against proving guilt by association or by a predisposition based on past criminal acts, is a permissible component of the articulable suspicion required for a Terry stop."). Am concedes that Vail knew he was on probation but contends that his previous convictions were irrelevant because none involved firearms. However, we have noted that officers can consider all prior criminal activity, including gang membership, in determining whether to initiate a Terry stop, Kimball, 25 F.3d at 7. Vail testified at the suppression hearing that he was aware that Am had been arrested for a drive-by shooting. Vail also had been the interviewing officer when Am was arrested while possessing a .22 caliber rifle. Therefore, we find that the district court was correct in concluding that the factors articulated by the officers, taken together, demonstrated that when they decided to approach Am, they reasonably believed that Am was engaged in criminal conduct. See United States v. Hart, 334 F. Supp. 2d 5, 10 (D. Mass. 2003) (noting that there was reasonable suspicion to stop the defendant because of the officers' belief that he would be carrying a weapon for protection and did not have the requisite license to do so).[4]

---

[4] In its opinion, the district court cited and discussed Hart at some length, comparing it to the operative facts in the present case. Am, 2007 WL 465676 at *3-4. Am spends considerable time

-10-

Finally, the officers testified that they considered Detective Hogan's tip to Vail that Am was a suspect in a recent shooting. Am argues that this reliance was improper because Hogan's tip was unsubstantiated. Under the "collective knowledge" or "pooled knowledge" principle, "reasonable suspicion can be imputed to the officer conducting a search if he acts in accordance with the direction of another officer who has reasonable suspicion." Barnes, 506 F.3d at 62-63; see also Morelli v. Webster, 552 F.3d 12, 17 (1st Cir. 2009); United States v. Cook, 277 F.3d 82, 86 (1st Cir. 2002) ("[T]he knowledge of each officer should be imputed to others jointly involved in executing the stop."). Thus, for example, Officer Kmiec was entitled to assume that Sergeant Vail, who had far greater familiarity with Am, was "acting in a manner consistent with [his] legal responsibilities." Morelli, 552 F.3d at 17.

The district court credited Vail with the information conveyed by Hogan -- Hogan, a gang specialist in the Lynn police force, had interviewed an anonymous witness who believed Am was the

---

here objecting to the court's reliance on Hart and argues that the court instead should have found controlling United States v. Weaks, 1995 WL 791944 (D. Mass. 1995), in which the court suppressed evidence seized in a taxicab stop and search after officers observed the defendant cover his face. We find no fault with the district court's reasoning. We agree with the government that the court discussed Hart to support one of the multiple factors upon which it relied in reaching its decision. Moreover, we concur with the district court that the facts leading up to Am's search more closely align with those in Hart than in Weaks.

-11-

triggerman in a recent shooting. A tip to an officer must bear sufficient "indicia of reliability." Adams v. Williams, 407 U.S. 143, 147 (1972). If information is conveyed "in the absence of a reasonable suspicion, then a stop in the objective reliance upon it violates the Fourth Amendment." United States v. Hensley, 469 U.S. 221, 232 (1985). Compare Ruidíaz, 529 F.3d at 30-31 (finding stop justified where police relied in part on an anonymous telephone call but the caller confirmed his phone number and agreed that the officers could call him back) with Monteiro, 447 F.3d at 44-45 (determining that police unreasonably relied on a tip by an anonymous relative of a rival rang member who relayed the information, noting hearsay and motive concerns). In its brief and at oral argument, the government failed to provide information regarding the source or reliability of Hogan's tip.[5] Without more, we refrain from passing judgment on the reasonableness of Hogan's reliance on the witness report. Instead, as the government suggested at oral argument, we excise Hogan's information from our analysis of the officers' decision to approach Am.[6] Nonetheless,

---

[5] For example, we do not know the manner in which the witness provided his information to Hogan, a consideration which has proven material in prior cases. See, e.g., Florida v. J.L., 529 U.S. 266, 270 (2000) (unknown tipster called police from an unknown location); Adams, 407 U.S. at 146 (informant came forward to provide the information); Taylor, 162 F.3d at 15 (1st Cir. 1998) (officer recognized informant's voice and knew informant, who previously had provided accurate information, by name).

[6] Indeed, on cross-examination, Vail stated, "Regardless of my phone call with Detective Hogan, I would have spoke[n] with [Am]."

we find that the other factors discussed -- the high-crime area; Am's criminal history, gang affiliation, probationary status, and proclivity to carry a weapon; and the unusual occurrence of Am walking alone in a rival gang's territory -- were sufficient to establish the reasonable suspicion required to initiate a Terry stop of Am.

We next review whether the search conducted by the officers was reasonably related in scope to the circumstances which justified the stop. The district court properly noted that "[t]he reasonable suspicion that permitted the police to stop Am does not automatically give police the authority to frisk him attendant to that search." Am, 2007 WL 465676 at *4. Instead, an officer's "subsequent actions must be 'responsive to the emerging tableau - the circumstances originally warranting the stop, informed by what occurred, and what the officer learned, as the stop progressed.'" United States v. Coplin, 463 F.3d 96, 100 (1st Cir. 2006) (quoting United States v. Chhien, 266 F.3d 1, 6 (1st Cir. 2001)). When the officers exited their vehicle, they did not call for backup, and neither unholstered his weapon to suggest the stop would escalate to an arrest. Cf. United States v. Smith, 423 F.3d 25, 30 (1st Cir. 2005). Meanwhile, Am did an "about face" and thrust his hand into his pocket. This action corroborated the officers' reasonable suspicion that Am was engaged in criminal activity and heightened their concern that he might be armed and dangerous, justifying the

officers' decision to conduct a pat-frisk.[7]  Cf. United States v. Andrade, 551 F.3d 103, 112-13 (1st Cir. 2008) (finding that the officer reasonably could have thought the defendant was concealing a weapon because he had his hands in his pocket); United States v. Alston, 112 F.3d 32, 33 (1st Cir. 1997) (same).

The officers limited their search to the exterior of Am's clothing and felt an object in his left-hand pocket before reaching into the pocket to retrieve the gun.  Compare United States v. Romain, 393 F.3d 63, 72 (1st. Cir 2004) (finding search reasonable where the officer began at the defendant's waist and went no further than to extract the gun) with United States v. Casado, 303 F.3d 440, 447 (2d Cir. 2002) (suppressing evidence where officer reached into defendant's pocket before conducting a pat-down).  Further, Am was stopped and questioned in a neutral setting, a street, the stop only lasted for five minutes before he was arrested based upon probable cause, and the officers did not handcuff Am until after their retrieval of the gun.  Cf. Taylor, 162 F.3d at 21 (finding pat-frisk reasonable where ten to twelve officers were at the scene and the detention lasted roughly thirty minutes).  In sum, we find the Terry stop and pat-frisk of Am

---

[7] Am argues that the officers did not conduct a pat-frisk and instead shoved their hands directly into his pockets.  The district court found that a pat-frisk occurred, and we will not disturb this factual finding.  See Ruidíaz, 529 F.3d at 32 ("[C]redibility judgments are for the district court, not for the court of appeals.").

-14-

supported by reasonable suspicion and properly responsive in scope to the circumstances surrounding the stop.[8]

**B. Sentencing**

Am also objects to his sentence separately in a pro se brief. Citing the Supreme Court's recent decision in Begay v. United States, 128 S.Ct. 1581 (2008), Am mainly argues that his prior conviction for assault with a knife does not qualify as a predicate offense under ACCA because the statute under which he was convicted, M.G.L. ch. 265, §15B, lacks an express element requiring force. We agree with the government that this contention fails regardless of the standard of review we employ. By its terms, the Massachusetts statute at issue, which criminalizes "an assault upon another" by "means of a dangerous weapon," id., "has as an element the use, attempted use, or threatened use of physical force" as required by ACCA, 18 U.S.C. § 924(e)(2)(B)(i). See Commw. v. Melton, 436 Mass. 291, 295 (2002) (stating that the Massachusetts statute requires the state to prove either an attempted or

---

[8] We thus disagree with Am's suggestion that the stop amounted to a de facto arrest. "There is no scientifically precise formula that enables courts to distinguish between investigatory stops, which can be justified by reasonable suspicion . . . and . . . 'de facto arrests'" which require probable cause. United States v. Zapata, 18 F.3d 971, 975 (1st Cir. 1994). While Am clearly was seized when the officers physically restrained him, "[t]he appropriate legal determination to be made in this case is whether the seizure exceeded the scope of a permissible Terry stop." United States v. Maguire, 359 F.3d 71, 77 (1st Cir. 2004). Because we have concluded that the stop did not exceed such bounds, we similarly find that no de facto arrest occurred.

-15-

immediately threatened battery perpetrated by means of a dangerous weapon); Commw. v. Gorassi, 432 Mass. 244, 248 (2000) ("[A]n assault is defined as either an attempt to use physical force on another, or as a threat of use of physical force.").[9]

Finally, we deal summarily with Am's claim, also made in his pro se brief, that the district court failed to examine the mens rea requirement of the predicate offense.[10]  Under Massachusetts law, assault by means of a dangerous weapon is a general intent crime and requires either intentional and unjustified use of force upon another person or the "intentional commission of a wanton or reckless act . . . causing physical or bodily injury to another."  Cmmw. v. Ford, 424 Mass. 709, 711 (1997) (quotation omitted).  Because the state, under either of these two theories, had to show that Am acted intentionally, his

---

[9] Am's reliance on Begay is misplaced.  In Begay, the Court determined that a New Mexico felony conviction for driving under the influence of alcohol did not qualify as a violent felony for ACCA purposes because the crime was not "purposeful, violent, and aggressive" and was not similar in kind to ACCA's example crimes of "burglary, arson, extortion, and crimes involving the use of explosives."  128 S.Ct. at 1586. Am's conviction for assault with a dangerous weapon, however, clearly satisfies the requirements of ACCA.

[10] The government urges us to treat the argument as waived, citing United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990), in which we refused to consider an argument because the defendant's lawyer presented the issue "in a perfunctory manner, unaccompanied by some effort at developed argumentation."  Because Am introduces this issue pro se, we decline to require of him the same level of analysis we would for trained legal counsel.

-16-

conviction for assault by means of a dangerous weapon thus constituted a "crime of violence" for purposes of career offender status. Cf. United States v. Zuniga-Soto, 527 F.3d 1110, 1113 (10th Cir. 2008) (reversing district court's determination that the defendant was a career offender because a prior offense did not qualify as a "crime of violence" where the state statute permitted conviction on recklessness grounds).

### III.

For the foregoing reasons, we **affirm** Am's conviction and sentence.