# United States Court of Appeals
## For the First Circuit

No. 14-1932

UNITED STATES OF AMERICA,

Appellee,

v.

JERMAINE WHINDLETON,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Nancy Torresen, U.S. District Judge]

Before

Lynch, Thompson, and Kayatta,
Circuit Judges.

J. Hilary Billings, Assistant Federal Defender, for appellant.
Renée M. Bunker, Assistant United States Attorney, with whom Thomas E. Delahanty II, United States Attorney, was on brief, for appellee.

August 10, 2015

**LYNCH**, **Circuit Judge**. Jermaine Whindleton appeals his fifteen-year sentence for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Under the Armed Career Criminal Act ("ACCA"), a defendant convicted under § 922(g)(1) faces a mandatory minimum sentence of fifteen years if he or she has three previous convictions for "a violent felony or a serious drug offense." Id. § 924(e). Whindleton concedes that one of his prior convictions qualifies as an ACCA predicate, but challenges on appeal the other two convictions identified by the district court.

We must resolve, first, whether Whindleton's prior conviction for Criminal Sale of a Controlled Substance under New York Penal Law § 220.39(1) qualifies as a "serious drug offense." Second, we must resolve whether Whindleton's prior conviction for Assault with a Dangerous Weapon under Massachusetts General Laws ch. 265, § 15B(b), qualifies as a "violent felony." Precedent informs our resolution of the former and mandates the latter. Since we conclude that both of the challenged convictions qualify as ACCA predicate offenses, we affirm Whindleton's sentence.

I.

Whindleton was arrested after using the barrel of a shotgun to strike Christopher Frey in the head during an argument in June of 2012 over a drug debt that Frey owed to Whindleton. Whindleton was later indicted for "knowingly possess[ing] . . . a

Mossberg, Model 500B, 16 Gauge shotgun" after having been convicted of four felonies in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). Specifically, Whindleton had been previously convicted of (1) Criminal Sale of a Controlled Substance in the Third Degree in New York in 2005; (2) Assault in the Second Degree in New York in 2006; (3) Assault with a Dangerous Weapon ("ADW") in Massachusetts in 2009; and (4) Possession with Intent to Distribute in Massachusetts in 2009.

A conviction for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), requires the defendant to possess a firearm after any one felony conviction. A jury found Whindleton guilty "of possession of a firearm by a convicted felon" on April 9, 2014.

An enhanced sentence under the ACCA, 18 U.S.C. § 924(e), requires the defendant to violate § 922(g) after three prior convictions for a "violent felony" or a "serious drug offense," as these terms are defined by the statute. If the ACCA applied to Whindleton's criminal history, he faced a mandatory minimum sentence of fifteen years. 18 U.S.C. § 924(e)(1). If not, he faced a maximum sentence of ten years. Id. § 924(a)(2).

At sentencing, Whindleton conceded that his Massachusetts conviction for Possession with Intent to Distribute qualified as a "serious drug offense." Over Whindleton's objection, the district court concluded that Whindleton's New York

- 3 -

conviction for Criminal Sale of a Controlled Substance in the Third Degree also qualified as a "serious drug offense," and that Whindleton's Massachusetts conviction for ADW qualified as "a violent felony."[1]  As a result, the district court imposed the mandatory minimum sentence under the ACCA of 180 months, or 15 years.

## II.

Section 922(g)(1) prohibits any person who has been convicted of a crime punishable by imprisonment for a term exceeding one year from shipping, possessing, or receiving firearms.  18 U.S.C. § 922(g)(1).  The ACCA increases the mandatory minimum sentence for this crime to fifteen years if the defendant has three prior convictions for "a violent felony or a serious drug offense, or both, committed on occasions different from one another."  Id. § 924(e)(1).  In this case, Whindleton argues that the district court erred when it concluded that his conviction for Criminal Sale of a Controlled Substance in the Third Degree qualified as a "serious drug offense," and that his conviction for ADW qualified as a "violent felony."

Whether a prior conviction qualifies as an ACCA predicate offense is a legal question we review de novo.  United

---

[1]  The district court also concluded that Whindleton's New York conviction for Assault in the Second Degree did not qualify as a "violent felony."  The government has not challenged this determination on appeal.

- 4 -

States v. Carrigan, 724 F.3d 39, 48 (1st Cir. 2013).  We employ a categorical approach, under which "we may consider only the offense's legal definition, forgoing any inquiry into how the defendant may have committed the offense."  United States v. Holloway, 630 F.3d 252, 256 (1st Cir. 2011); see also United States v. Bryant, 571 F.3d 147, 157 n.7 (1st Cir. 2009) (applying the same approach to controlled substances offenses).

The categorical approach is "modified" if the defendant was convicted under a statute which "sets out one or more elements of the offense in the alternative."  See Descamps v. United States, 133 S. Ct. 2276, 2281 (2013).  Under the modified categorical approach, the court may "consult a limited class of documents . . . to determine which alternative formed the basis of the defendant's prior conviction."  Id.  If these documents do not identify the basis of the defendant's prior conviction, the court must ensure that "each of the possible offenses of conviction would qualify [as an ACCA predicate]."  Holloway, 630 F.3d at 257.

A.      New York Criminal Sale of a Controlled Substance

Whindleton first argues that the district court erred in concluding that his 2005 conviction for Criminal Sale of a Controlled Substance in the Third Degree under New York Penal Law § 220.39(1) qualifies as a "serious drug offense" under the ACCA.  The ACCA defines a "serious drug offense" as "an offense under State law, involving manufacturing, distributing, or possessing

with intent to manufacture or distribute, a controlled substance . . ., for which a maximum term of imprisonment of ten years or more is prescribed by law."  18 U.S.C. § 924(e)(2)(A)(ii).[2]

A person violates New York Penal Law § 220.39(1) "when he knowingly and unlawfully sells . . . a narcotic drug."  New York defines "sell" to mean "to sell, exchange, give or dispose of to another, or to offer or agree to do the same."  N.Y. Penal Law § 220.00(1) (emphasis added).  Since Whindleton's record of conviction does not specify on what theory he was convicted, we must ensure that any form of the conviction would qualify as a "serious drug offense" under the ACCA.  See Holloway, 630 F.3d at 257.  Whindleton argues that his conviction does not qualify as a "serious drug offense" since an offer to sell does not "involv[e] manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance."[3]

---

[2]  The ACCA also defines a "serious drug offense" as "an offense under the Controlled Substances Act . . ., the Controlled Substances Import and Export Act . . ., or chapter 705 of title 46, for which a maximum term of imprisonment of ten years or more is prescribed by law."  18 U.S.C. § 924(e)(2)(A)(i).  This definition is not relevant to this case.

[3]  We note that the 2004 Drug Law Reform Act, which applied to defendants who committed their crimes after January 13, 2005, lowered the maximum sentence for Class B drug crimes to nine years. See 2004 N.Y. Sess. Laws ch. 738 §§ 36, 41 (McKinney) (codified at N.Y. Penal Law § 70.70(2)(a)(i) (2005)); see also People v. Utsey, 855 N.E.2d 791, 793 & n.5 (N.Y. 2006).  The 2009 Drug Law Reform Act then made that reduced sentence available to individuals convicted of Class B drug crimes before 2009 in certain circumstances.  See 2009 N.Y. Sess. Laws ch. 56, pt. AAA, § 9

- 6 -

We have previously held that, "[b]y using 'involving,' Congress captured more offenses than just those that 'are in fact' the manufacture, distribution, or possession of, with intent to distribute, a controlled substance." United States v. McKenney, 450 F.3d 39, 42 (1st Cir. 2006). The definition of a "serious drug offense" also "'encompass[es] . . . offenses that are related to or connected with such conduct.'" Id. at 43-44 (quoting United States v. King, 325 F.3d 110, 113 (2d Cir. 2003)).

For example, in McKenney, we held that a defendant's conviction for "conspiracy to violate a state controlled substances law by agreeing to possess with intent to deliver cocaine" qualified as a "serious drug offense" under the ACCA. Id. at 40. There was no argument that the defendant did, in fact, possess cocaine with intent to deliver, or that the defendant even took an overt step in that direction. Id. at 42-43 nn. 6 & 8. Nevertheless, we held that "the conspiracy standing alone was sufficient." Id. at 42-43 n.8. We explained that "the relationship between the inchoate offense of conspiracy and its object -- its entire purpose -- is plainly close enough that a

_____

(McKinney) (codified at N.Y. Crim. Proc. § 440.46); see also United States v. Calix, No. 13-582, 2014 WL 2084098, at *12 (S.D.N.Y. May 13, 2014). Whindleton makes no argument that New York's subsequent sentencing reforms for drug offenses should affect his case, and so we do not consider the issue further. Cf. McNeill v. United States, 131 S. Ct. 2218, 2224 n.1 (2011); Rivera v. United States, 716 F.3d 685 (2d Cir. 2013), Calix, 2014 WL 2084098; United States v. Jackson, No. 13-142, 2013 WL 4744828 (S.D.N.Y. Sept. 4, 2013).

conspiracy to possess with intent to distribute is, under the ACCA, an offense 'involving . . . possessing with intent to . . . distribute.'"  <u>Id.</u> at 45 (alterations in original).

Whindleton concedes, as he must, that courts have "interpreted the ACCA's language to include <u>conspiring</u> or <u>attempting</u> to manufacture, distribute, or possess with intent to distribute drugs" as well as "<u>aiding and abetting</u> the distribution of drugs."  <u>See, e.g.</u>, <u>McKenney</u>, 450 F.3d at 45 (conspiracy); <u>King</u>, 325 F.3d at 115 (attempt); <u>United States</u> v. <u>Madera</u>, 521 F. Supp. 2d 149, 152 (D. Conn. 2007) (accessory liability).  But, he maintains, "an offer to provide drugs is simply not the equivalent of either a conspiracy, attempt, or aiding and abetting."

We understand Whindleton's argument to be that an offer to sell is farther removed from its object than these inchoate crimes.[4]  We have said that "[n]ot all offenses bearing any sort of relationship with drug manufacturing, distribution, or

---

[4]  We are not persuaded by Whindleton's argument that the statute of conviction must fit perfectly within one of these categories of inchoate crimes to qualify as a "serious drug offense" under the ACCA.  This argument is foreclosed by <u>McKenney</u>, in which we explained that our inquiry is simply whether the statute at issue is sufficiently "related to or connected with" distributing, manufacturing, or possessing with intent to distribute or manufacture a controlled substance such that it "involv[es]" the same.  <u>See</u> 450 F.3d at 43-44 (quoting <u>King</u>, 325 F.3d at 113); <u>see also</u> <u>United States</u> v. <u>Gibbs</u>, 656 F.3d 180, 185-86 (3d Cir. 2011). The inchoate crimes of conspiracy, attempt, and aiding and abetting are examples of qualifying statutes, but not an exclusive list of possibilities.

possession with intent to manufacture or distribute will qualify as predicate offenses under the ACCA." McKenney, 450 F.3d at 45. Critically, "[t]he relationship must not be too remote or tangential." Id.

Other circuits, considering this question for different statutes, have concluded that offers to sell controlled substances are sufficiently "related to or connected with" drug distribution to qualify as serious drug crimes. In Texas, for example, the delivery statute was violated by "a person knowingly or intentionally offer[ing] to sell what he states is a controlled substance." United States v. Vickers, 540 F.3d 356, 365 (5th Cir. 2008) (citation and internal quotation marks omitted). Texas law did not require the defendant to "have any drugs to sell or even intend ever to obtain the drugs he is purporting to sell." Id. The Fifth Circuit nevertheless concluded that the Texas conviction qualified as a "serious drug offense" under the ACCA. Id. at 366. The Fifth Circuit explained that "[t]he expansiveness of the word 'involving' supports that Congress was bringing into the statute's reach those who intentionally enter the highly dangerous drug distribution world." Id. at 365.

Joining the Fifth Circuit, the Eighth Circuit held that "knowingly offering to sell drugs is a 'serious drug offense' under the ACCA." United States v. Bynum, 669 F.3d 880, 886 (8th Cir. 2012). The Eighth Circuit rejected the defendant's assertion that

the offer "must be 'genuine, made in good faith, or be accompanied by an actual intent to distribute a controlled substance' to 'involve' drug distribution." Id. at 887. "[S]o long as [the] defendant has intentionally made an offer to sell a controlled substance, he or she has 'intentionally enter[ed] the highly dangerous drug . . . marketplace as a seller.'" Id. (third and fourth alterations in original) (quoting Vickers, 540 F.3d at 365-66).

Under the New York statute at issue in this case, a defendant can be convicted of offering to sell a controlled substance even if the offer is not accepted, and even if the defendant does not yet possess the controlled substance. See People v. Mike, 706 N.E.2d 1189, 1191 (N.Y. 1998); see also People v. Samuels, 780 N.E.2d 513, 516 (N.Y. 2002). "However," the New York Court of Appeals has explained, "in order to support a conviction under an offering for sale theory, there must be evidence of a bona fide offer to sell -- i.e., that defendant had both the intent and the ability to proceed with the sale." Mike, 706 N.E.2d at 1191.

These two requirements for a bona fide sale more closely align the offer to sell a controlled substance with its ultimate distribution. While there need not be proof that the offer was accepted, there must be proof that the defendant intended to proceed with the sale. See id. A fraudulent offer, "'such as

when one offers to sell the Brooklyn Bridge,'" lacks the intent to consummate the sale and so would not suffice.  Pascual v. Holder, 723 F.3d 156, 158-59 (2d Cir. 2013) (per curiam) (quoting United States v. Savage, 542 F.3d 959, 965 (2d Cir. 2008)).  And, while there need not be proof that the defendant already possessed the controlled substance, there must be proof that he or she had the ability to proceed with the sale.  See Samuels, 780 N.E.2d at 516; Mike, 706 N.E.2d at 1191.  A conviction would not stand without proof that the "defendant had the ability to procure the [controlled substance] he purportedly offered to sell."  See Mike, 706 N.E.2d at 1190-91 (citation and internal quotation marks omitted).

Like our sister circuits, we conclude that an offer to sell a controlled substance -- like an attempt to sell or a conspiracy to sell -- is necessarily related to and connected with its ultimate goal, the distribution of controlled substances.  We reject any requirement that the defendant already possess the controlled substance or that the offer be accepted.[5]  It is

_____

[5]  The Second and Third Circuits have held that New York Penal Law § 220.39(1) is analogous to the federal crime of attempted distribution, 21 U.S.C. § 841(a)(1), and so qualifies as an aggravated felony under the Immigration and Nationality Act. Pascual, 723 F.3d at 158-59; Berroa v. Att'y Gen. of U.S., 523 F. App'x 913, 917-18 (3d Cir. 2013) (per curiam).  "Without doubt," the Second Circuit reasoned, "an offer to sell drugs -- made with the intent and ability to carry out the transaction -- is both a 'substantial step' and an 'overt act' in the attempted sale of a controlled substance."  Pascual, 723 F.3d at 159.  We need not

sufficient in this case that the defendant entered "the drug marketplace" with the intent and ability to proceed with the sale of a controlled substance if his or her offer were accepted.

Whindleton argues that this conclusion stretches the definition of a "serious drug crime" too far. According to Whindleton, "[s]uch an expansive reading of the ACCA undermines the categorical approach mandated for determination of qualifying predicates," and "do[es] harm to the cannon [sic] of strict construction of criminal statutes, or the rule of lenity." "Under such a standard," he contends, "the mere possession of any drug, regardless of quantity, is 'related to or connected with' possession with intent to distribute."

While the term "involving" may be expansive, it is not limitless.[6] McKenney, 450 F.3d at 45. We hold today only that an offer to sell under New York law -- requiring the intent and the ability to proceed with a sale -- sufficiently "involv[es]" the

---

decide in this case whether New York Penal Law § 220.39(1) necessarily entails a substantial step under attempt liability since such a step is not required to bring the statute within the definition of "involving" in the ACCA.

[6] Whindleton suggests that the expansive interpretation of the word "involving" in 18 U.S.C. § 924(e)(2)(A)(ii) "raises issues of constitutional vagueness." To the extent that Whindleton seeks to challenge § 924(e)(2)(A)(ii) as void for vagueness, we consider the argument insufficiently developed and, thus, waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

distribution of drugs to qualify as a "serious drug offense" under the ACCA.

B.         <u>Massachusetts Assault with a Dangerous Weapon</u>

Whindleton next argues that his 2009 conviction for ADW under Massachusetts General Laws ch. 265, § 15B(b), does not constitute a "violent felony" under the ACCA.  The ACCA defines the term "violent felony" as "any crime punishable by imprisonment for a term exceeding one year . . . that":

> (i)  has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii)  is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another . . . .

18 U.S.C. § 924(e)(2)(B).  In this case, the district court concluded that Whindleton's ADW conviction qualified as a "violent felony" under the ACCA's so-called "Force Clause," the first clause of the definition, and the so-called "Residual Clause," the catch-all provision in the second clause after the enumerated offenses.

The Supreme Court has recently invalidated the Residual Clause as unconstitutionally vague.  <u>Johnson</u> v. <u>United States</u>, 135 S. Ct. 2551 (2015).  That issue has dropped out of our case.[7]

---

[7]  In <u>Johnson</u>, the Court explained that, "[b]y combining indeterminacy about how to measure the risk posed by a crime with indeterminacy about how much risk it takes for the crime to qualify as a violent felony, the residual clause produces more

- 13 -

Whindleton does not challenge the constitutionality of the Force Clause after Johnson. The Supreme Court specified that its decision in Johnson "does not call into question application of the Act to the four enumerated offenses, or the remainder of the Act's definition of a violent felony." Id. at 2563. We focus on whether Whindleton's conviction for ADW "has as an element the use, attempted use, or threatened use of physical force against the person of another," such that it qualifies as a "violent felony" under the ACCA's Force Clause. 18 U.S.C. § 924(e)(2)(B)(i). Our precedent answers the question.

The Massachusetts ADW statute is violated by "[w]hoever, by means of a dangerous weapon, commits an assault upon another." Mass. Gen. Laws ch. 265, § 15B(b). The Massachusetts common law recognizes two theories of assault: attempted battery and threatened battery. Commonwealth v. Porro, 939 N.E.2d 1157, 1163 (Mass. 2010).[8] Battery, in turn, has been defined as "harmful [or]

---

unpredictability and arbitrariness than the Due Process Clause tolerates." 135 S. Ct. at 2558. Recognizing the impact of Johnson on cases pending on direct review, see Griffith v. Kentucky, 479 U.S. 314, 328 (1987), the government has declined to pursue any argument based on the now-invalidated Residual Clause.

[8] Under the attempted-battery theory, the government must prove that "the defendant 'intended to commit a battery, took some overt step toward accomplishing that intended battery, and came reasonably close to doing so.'" Porro, 939 N.E.2d at 1163 (quoting Commonwealth v. Melton, 763 N.E.2d 1092, 1096 (Mass. 2002)). Under the threatened-battery theory, the government must prove that "the defendant engaged in conduct that a reasonable person would recognize to be threatening, that the defendant intended to place

- 14 -

offensive touching[]." See Commonwealth v. Burke, 457 N.E.2d 622, 624 (Mass. 1983). As such, the crime of simple assault has been held to encompass attempted or threatened touching if offensive. See United States v. Martinez, 762 F.3d 127, 138 (1st Cir. 2014). "The crime of [ADW] adds one additional element, namely, that the assault was perpetrated by means of a dangerous weapon." Commonwealth v. Melton, 763 N.E.2d 1092, 1096 (Mass. 2002).

This circuit has already held that a defendant's ADW conviction "clearly satisfies" the ACCA's Force Clause. United States v. Am, 564 F.3d 25, 33 & n.9 (1st Cir. 2009). In Am, we quoted the Massachusetts Supreme Judicial Court as holding that "'[a]n assault is defined as either an attempt to use physical force on another, or as a threat of use of physical force.'" Id. at 33 (quoting Commonwealth v. Gorassi, 733 N.E.2d 106, 110 (Mass. 2000)). "By its terms," we explained, "the Massachusetts statute at issue, which criminalizes 'an assault upon another' by 'means of a dangerous weapon' 'has as an element the use, attempted use, or threatened use of physical force' as required by ACCA." Id. (citations omitted).[9]

---

the victim in fear of an imminent battery, and that the victim perceived the threat." Id.

[9] In Am, we also rejected the defendant's pro se argument that the mens rea for Massachusetts ADW was insufficient to qualify as a crime of violence. 564 F.3d at 33-34. The Massachusetts ADW statute "is a general intent crime and requires either intentional and unjustified use of force upon another person or the

- 15 -

Generally, "a ruling of law by a panel of this court is binding upon subsequent panels." Arecibo Cmty. Health Care, Inc. v. Puerto Rico, 270 F.3d 17, 22 (1st Cir. 2001). An exception to the doctrine of stare decisis applies if "[a]n existing panel decision [is] undermined by controlling authority, subsequently announced, such as an opinion of the Supreme Court . . . ." United States v. Rodriguez-Pacheco, 475 F.3d 434, 441 (1st Cir. 2007) (first and second alterations in original) (citation and internal quotation marks omitted).

Whindleton challenges "the continuing vitality" of our holding in Am based on the Supreme Court's decision in another critical ACCA case named Johnson v. United States. In Johnson, the defendant had been convicted under Florida's battery statute, which could be violated by "any intentional physical contact, no matter how slight," such as a tap on the shoulder without consent. 559 U.S. 133, 138 (2010) (citation and internal quotation marks omitted). The Court held that "the phrase 'physical force' [in the ACCA] means violent force -- that is, force capable of causing

---

'intentional commission of a wanton or reckless act . . . causing physical or bodily injury to another.'" Id. at 34 (alteration in original) (quoting Commonwealth v. Ford, 677 N.E.2d 1149, 1151 (Mass. 1997)). We held that, "under either of these two theories, [the state] had to show that Am acted intentionally." Id. Whindleton has not argued on appeal that this conclusion was incorrect or that any intervening precedent requires us to revisit our holding regarding the mens rea of the Massachusetts ADW statute.

- 16 -

physical pain or injury to another person." Id. at 140. Because the Florida statute could be satisfied by physical force that did not amount to violent force, the Court held that a conviction under it did not qualify as a violent felony under the Force Clause. See id. at 139-43, 145.

Whindleton argues that Johnson undermines the holding of Am "[s]ince assault, even with use of a dangerous weapon, is based upon either an attempted or threatened battery that may be accomplished by a mere touching." After careful review, we conclude that Johnson in no way undermines Am, and we remain bound by its holding. See United States v. Chanthachack, 483 F. App'x 580, 580 (1st Cir. 2012) (per curiam) (citing Am as controlling precedent after Johnson).

It is critical that the statute at issue here is Assault with a Dangerous Weapon. The statute can be understood as having two elements: the attempted or threatened battery (simple assault) and the use of a dangerous weapon. See Melton, 763 N.E.2d at 1096. Whindleton's argument focuses solely on the first element. Namely, Whindleton argues that assault is either attempted or threatened battery; that battery can be accomplished by mere touching; and that, ergo, a defendant can be convicted of assault for attempted or threatened offensive touching, which is insufficient for a violent felony after Johnson. This was, in fact, the logic of Martinez, in which we held that simple assault did not qualify as

a "crime of violence" under the Sentencing Guidelines. See 762 F.3d at 137-38. But, this case involves the additional element that the assault must be accomplished "by means of a dangerous weapon." Mass. Gen. Laws ch. 265, § 15B(b). Cf. United States v. Dancy, 640 F.3d 455, 467-69 (1st Cir. 2011) (distinguishing Assault and Battery on a Police Officer from Assault and Battery due to the additional element).

"To support a conviction under § 15B, the Commonwealth must show that the threat of harm was by means of a dangerous weapon." Commonwealth v. Flanagan, 458 N.E.2d 777, 781 (Mass. App. Ct. 1984). Under Massachusetts law, a dangerous weapon can be "dangerous per se" or "dangerous as used." Commonwealth v. Tevlin, 741 N.E.2d 827, 833 (Mass. 2001). The first category consists of "instrumentalit[ies] designed and constructed to produce death or great bodily harm." Id. (alteration in original) (citation and internal quotation marks omitted). The second category consists of objects that, "as used by the defendant, [are] capable of producing serious bodily harm." Id. (citation and internal quotation marks omitted). Logically, the harm threatened by an assault is far more violent than offensive touching when committed with a weapon that is designed to produce or used in a way that is capable of producing serious bodily harm or death. As a result, the element of a dangerous weapon imports the "violent

- 18 -

force" required by Johnson into the otherwise overbroad simple assault statute.

Following this reasoning, a Massachusetts Appeals Court in Commonwealth v. Clark, 10 N.E.3d 670, 2014 WL 2776858 (Mass. App. Ct. June 20, 2014) (unpublished opinion), held that ADW necessarily entails violent force due to the nature of a dangerous weapon. See id. at *1. There, the Massachusetts Appeals Court analyzed whether a conviction for ADW qualified as a "violent crime" under Massachusetts' version of the ACCA.[10] Id. Citing Am with approval, the court held that "[a]ll the crimes encompassed in [the ADW statute] are violent crimes under the [Massachusetts ACCA] force clause." Id. The court focused on the dangerous-weapon element and explained that, "[b]ecause the weapon has to be capable of producing serious bodily harm or be designed and constructed to produce death or great bodily harm, every attempted battery or immediately threatened battery with this type of weapon is either an attempted use or threatened use of physical force that is capable of causing pain or injury." Id.

---

[10] The equivalent of the ACCA's Force Clause in the Massachusetts statute defines a "violent crime" as "any crime punishable by imprisonment for a term exceeding one year . . . that: (i) has as an element the use, attempted use or threatened use of physical force or a deadly weapon against the person of another." Mass. Gen. Laws ch. 140, § 121; see also Mass. Gen. Laws ch. 269, § 10G. The term "physical force" in the Massachusetts statute "means 'violent or substantial force capable of causing pain or injury.'" Clark, 2014 WL 2776858, at *1 (citation omitted).

- 19 -

Our court has previously relied on similar logic to find that Assault and Battery with a Dangerous Weapon ("ABDW") qualifies as a violent felony under the now-invalid Residual Clause. See United States v. Hart, 674 F.3d 33, 40-44 (1st Cir. 2012). In Hart, we stressed that ABDW must "be perpetrated by means of a dangerous weapon." Id. at 44. We held that, in light of Massachusetts' definition for a dangerous weapon, "'logic dictates that ABDW ineluctably poses a serious potential risk of physical injury' because the defendant effected the touching with an instrument designed to cause, or wielded an object in a manner capable of producing, serious bodily harm." Id. 42-43 (quoting United States v. Glover, 558 F.3d 71, 81 (1st Cir. 2009)). Accordingly, we held that ABDW was a violent felony under the Residual Clause even if AB was not. Compare Holloway, 630 F.3d at 260-62 (holding that AB does not categorically qualify under the Residual Clause), with Hart, 674 F.3d at 44 (holding that ABDW does). Like in Hart, ADW can be a violent felony under the Force Clause, even if simple assault is not, by virtue of the additional dangerous-weapon element.

This conclusion is further supported by the Tenth Circuit's decision in United States v. Ramon Silva, 608 F.3d 663 (10th Cir. 2010), issued after Johnson. There, the Tenth Circuit considered a New Mexico statute, which defined aggravated assault as "'unlawfully assaulting or striking at another with a deadly

weapon.'" Id. at 669 (quoting N.M. Stat. Ann. § 30-3-2(A)). The defendant argued that a conviction under this statute did not qualify as a violent felony under the ACCA since the statute could be violated by "'engaging in conduct with a deadly weapon that causes the victim to believe he or she was about to receive a battery,'" id., which is similar to the threatened-battery theory of assault in Massachusetts.

"Applying Johnson," the Tenth Circuit concluded that this theory of assault qualified as a violent felony under the Force Clause of the ACCA.[11] Id. at 670. The court explained:

> Purposefully threatening or engaging in menacing conduct toward a victim, with a weapon capable of causing death or great bodily harm, threatens the use of "force capable of causing physical pain or injury" in two different ways. The conduct "could always lead to . . . substantial and violent contact, and thus it would always include as an element" the threatened use of violent force. And the conduct "could at least put the victim on notice of the possibility that the weapon will be used more harshly in the future, thereby constituting a threatened use of force."

---

[11] Citing Am, the Tenth Circuit also rejected the argument that the conviction for apprehension-causing aggravated assault lacked the necessary mens rea since it was a "general intent crime." Ramon Silva, 608 F.3d at 672-73. "[T]he crime requires proof that a defendant purposefully threatened or engaged in menacing conduct toward a victim, with a weapon capable of producing death or great bodily harm." Id. at 674 (emphasis deleted). The Tenth Circuit concluded that "this intentional conduct threatens the use of physical force against the person of another, and therefore qualifies as a violent felony under the ACCA." Id.

<u>Id.</u> at 672 (alteration in original) (citations omitted); <u>see also</u> <u>United States</u> v. <u>Rede-Mendez</u>, 680 F.3d 552, 558 (6th Cir. 2012) (noting that "the use of a deadly weapon may transform a lesser degree of force into the necessary 'violent force'").

Finally, dicta in <u>Johnson</u> assumed that an assault and battery with a dangerous weapon was a "violent felony." The Supreme Court noted that "[w]hen the adjective 'violent' is attached to the noun 'felony,' its connotation of strong physical force is even clearer," and quoted Black's definition of "violent felony" as "[a] crime characterized by extreme physical force, such as murder, forcible rape, and <u>assault and battery with a dangerous weapon</u>." <u>Johnson</u>, 559 U.S. at 140-41 (emphasis added).

For these reasons, we conclude that <u>Johnson</u> does not overrule our holding in <u>Am</u> that the Massachusetts statute for ADW, "which criminalizes 'an assault upon another' by 'means of a dangerous weapon,' 'has as an element the use, attempted use, or threatened use of physical force'" as required by the ACCA's Force Clause. 564 F.3d at 33 (citations omitted).[12]

---

[12] We note that this circuit has held that a conviction for ABDW "does not have as an element" the intentional use of physical (i.e. violent) force, and so does not qualify as a "crime of violence" under a different (but similarly worded) statute, 18 U.S.C. § 16(a). <u>United States</u> v. <u>Fish</u>, 758 F.3d 1, 9 (1st Cir. 2014) (internal quotation marks omitted). But whether <u>Fish</u>'s holding should inform our analysis of the ACCA is a point we need not decide today, as the defendant has not developed, or even expressly asserted, any argument that Massachusetts's ADW fails to qualify

- 22 -

III.

We <u>affirm</u> Whindleton's sentence under the ACCA.

---

as a violent felony under the ACCA because it lacks any requirement that the use or threat be intentional.