COMMONWEALTH vs. RUSSELL M. BARRETT.

Essex. March 2, 1982. — June 29, 1982.

Present: HENNESSEY, C.J., ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Identification. Error,* Harmless. *Assault and Battery. Words,* "Dangerous weapon."

At the trial of a criminal case, admission of a police officer's testimony that a witness had identified the defendant's photograph after examining a collection of photographs maintained by the police, although error, did not prejudice the defendant, where the strategy which defense counsel had adopted at the outset of the trial would have disclosed in any event the defendant's previous encounters with the police. [651-654]

A jury might properly find that an aerosol spray can, from which a criminal defendant allegedly sprayed the victim with a blinding liquid while the victim was operating a motor vehicle, was a "dangerous weapon" as contemplated by G. L. c. 265, § 15A. [654-656]

INDICTMENT found and returned in the Superior Court Department on October 15, 1979.

The case was tried before *Lappin,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Brownlow M. Speer* for the defendant.

*John Gillen,* Assistant District Attorney, for the Commonwealth.

LYNCH, J. On July 17, 1980, Russell M. Barrett was found guilty of assault and battery by means of a dangerous weapon,[1] assault and battery,[2] and operating a motor vehicle without authority,[3] after a trial by jury. The defendant

---

[1] G. L. c. 265, § 15A.

[2] G. L. c. 265, § 13A.

[3] G. L. c. 90, § 24 (2) (*a*).

was sentenced to six years in the Massachusetts Correctional Institution at Concord on the charge of assault and battery by means of a dangerous weapon, to be served concurrently with another sentence he was then serving; the remaining two charges were filed with the defendant's consent. The defendant appealed on the ground that the judge committed material prejudicial error by admitting testimony regarding the presence of the defendant's photograph in the "mug shot" files maintained by the Saugus police department, and on the ground that evidence introduced at trial was not sufficient to support an inference that the defendant had employed a dangerous weapon. The Appeals Court affirmed the judgment. *Commonwealth* v. *Barrett*, 12 Mass. App. Ct. 1001 (1981). We also conclude that there was no error, and affirm.

We summarize the facts. Late in the evening of September 28, 1979, Kevin P. Perry, who lived in Saugus, attended an impromptu party in a wooded area near the Cliftondale Square rotary in Saugus. While he was at the party, Perry met the defendant, who was an acquaintance. During the party, Perry was sprayed in the face with liquid from an unpressurized spray bottle by a man unknown to him at that time. Perry left the party and drove to the Saugus fire-police station for first aid treatment. Perry later identified his assailant as one Brian F. Thomas.

Later, sometime after midnight, Perry was driving a pickup truck toward the Cliftondale Square rotary when he saw Russell Barrett and two other youths hitchhiking in that direction. Barrett waved to Perry, who then brought his truck to a stop. Barrett got into the cab of the truck; the other two passengers climbed into the back of the open truck. As they were driving, Perry told Barrett about the spraying incident that had occurred earlier. Barrett said, "Well, let's . . . go see if we can find [the perpetrator] and take care of him."

As they entered the rotary, Perry observed his assailant standing in a group outside a store. When Perry pointed out this man to Barrett, Barrett told Perry to stop. Perry,

apparently having second thoughts, refused, and continued to drive his truck slowly around the rotary. Barrett, nonetheless, yelled something out the window, and Thomas jumped into the back of the slowly moving truck.

Perry, who at this point said he wanted only to go home, inquired of Barrett where he wished to be taken. Barrett directed Perry toward Barrett's home. When Perry got there, however, he refused to stop the truck; he was apparently afraid of what might ensue. Barrett yelled at Perry, ordering him to stop. Perry continued to drive, and Barrett sprayed him in the face with a liquid from an aerosol can,[4] at the same moment reaching over and stepping on the brake pedal. Perry was temporarily blinded, and a fight broke out during which Perry was struck several times in the head, either by Barrett or by someone who was in the back of the truck.

Police officers arrived at the scene in less than two minutes. They were unable to apprehend any of the attackers, who had fled. Perry told the officers about the incident and later gave them a written statement. They took Perry to a local hospital, where he was treated for a fractured right wrist.

1. *The challenged identification testimony.* Barrett and Thomas were tried together on charges arising out of the events related above. Perry testified that he was acquainted with Barrett prior to those events. The identity of the person whom Perry alleged to have sprayed him in the cab of Perry's truck was not an issue in the case. Perry was not acquainted with the man he later identified as Thomas, however. At the conclusion of Perry's testimony, the Commonwealth called Officer Dennis J. Walters of the Saugus police department, one of two officers in the cruiser who arrived at the scene, to testify to the means by which Perry had identified Thomas. After the officers took Perry to the

---

[4] Perry referred to this blinding liquid as Mace (a chemical which has effects similar to tear gas). The judge, in the absence of proof of the aerosol container's contents, ordered the reference to Mace struck.

hospital for treatment of his fractured wrist, they brought him to the Saugus police station. Officer Walters testified concerning the identification procedures that were used there.

The defendant asserts that the trial judge erred in allowing Officer Walters to testify that Perry selected Barrett's photograph after examining a photo album taken from the "inspector's area" of the Saugus police department.[5] "It is a matter of fairly common knowledge that the central photographic files maintained by police do not in general contain the likenesses of any save those who have had some contact with criminal law." *Commonwealth* v. *Gibson*, 357 Mass. 45, 48-49, cert. denied, 400 U.S. 837 (1970). Ordinarily, therefore, "testimony about the process by which the [defendant's] photograph was selected should be excluded." *Commonwealth* v. *Nassar*, 351 Mass. 37, 43 (1966) (reversing convictions for this and other errors). The rule does not apply when the identity of the perpetrator is a central issue in the case, and the defendant attacks the procedures by which identification was made. Here, however, Barrett's identity was never at issue. The prejudice to Barrett of the testimony indicating that his photograph could be found in the police files clearly outweighed the relevance and probative effect, if any, of that testimony.

Even though admission of that testimony as it related to Barrett was error, there was no resulting harm to the defendant.[6] The record reveals that Barrett's counsel adopted, at the outset of the trial, a strategy which inevitably would result in disclosure to the jury that Barrett had had prior en-

---

[5] The Commonwealth conceded here that Barrett's claim of error was properly preserved for appellate review. We therefore need not consider whether defense counsel should have made a motion to strike that part of Officer Walters's testimony that went beyond the scope of the prosecutor's question in order to preserve the defendant's claim of error on appeal.

[6] We need not decide whether testimony that Perry selected a photograph of Thomas from police files, and thereby identified one of his assailants whose identity was in doubt, constituted error. Thomas's appeal from his convictions is not before us.

counters with the criminal law. Counsel indicated, prior to empanelment of the jury, that he intended to call Barrett's parents as witnesses. His parents were called, and they testified that police officers had pursued Barrett to their house one evening a few months before the incident involved here. Their testimony, which included allegations that Officer Walters and a fellow officer had threatened to shoot Barrett and to "put him away for life," was offered for its tendency to prove that Walters was biased against Barrett. Barrett's mother testified that Barrett later was arrested on charges arising out of the events which had led police to pursue him. The jury reasonably could have inferred that the Saugus police department had the defendant's photograph as a result of his arrest on those charges.

As a result of proceedings on a motion in limine, Barrett's counsel was on notice that if Barrett chose to testify the Commonwealth would be permitted to impeach him by reference to prior convictions.[7] See G. L. c. 233, § 21. Not only is there nothing to suggest that Barrett would have refrained from testifying had Walters's testimony been excluded, but comments made by Barrett's counsel show that he always intended to call Barrett to testify on his own behalf.[8] Barrett testified, and was impeached with his prior convictions.[9]

---

[7] In denying Thomas's counsel's motion to exclude any evidence of Thomas's prior convictions, the judge stated: "[I]t is not my practice to restrict the use of the convictions if they're otherwise permitted, and if the Commonwealth moves on it."

[8] Officer Walters testified during the morning session on the second day of trial. Before the afternoon session that same day, Barrett's counsel made the following statements to the judge: "I was talking to my client during the lunch hour, and he told me some things for the first time. . . . He told me some things during that time that would greatly prejudice [Thomas]. And *I had planned to use him as a witness,* and still plan to use him as a witness. But he is going to accuse [Thomas] of doing some of these things. And he has never told me before, or I could have disclosed it to [Thomas's counsel]" (emphasis supplied).

[9] Three convictions were introduced to impeach Barrett: assault and battery upon a police officer, assault by means of a dangerous weapon, and possession of a knife with a blade in excess of two and one half inches (in violation of a Lynn city ordinance).

On the record, it appears that Barrett's attorney made a reasonable, tactical decision to reveal Barrett's previous encounters with the criminal law by attacking Officer Walters's testimony for bias and by putting Barrett on the stand to present his side of the story as forcefully as possible. In these circumstances, the judge's ruling allowing the admission of testimony concerning Perry's selection of Barrett's photograph from files maintained by the Saugus police department did not infringe upon Barrett's right to the presumption of innocence. The judge's ruling can only be characterized as being not prejudicial. See *Commonwealth v. Pickles,* 364 Mass. 395, 400 (1973).

2. *Aerosol spray can as "dangerous weapon."* Barrett argues that the judge erred in refusing to grant his motion for a required finding of not guilty of the charge of assault and battery by means of a dangerous weapon. He asserts that the evidence submitted to the jury was not sufficient, as a matter of law, to sustain a verdict of guilty of that offense. We disagree.

Perry testified that as he was driving along Clifton Street in Saugus, Barrett sprayed him in the face with Mace. The judge ordered Perry's reference to Mace struck from the record. No evidence was offered regarding the chemical composition of the spray. The spray came from a small aerosol can, "about an inch and a half in diameter, and about six inches long." When asked about the effects of the spraying, Perry testified as follows: "My eyes — I couldn't see. And my nose was running. My face was burning." He testified further that he was unable even to see lights for approximately five minutes. After Barrett had slammed on the brakes and brought the truck to a halt, Barrett (according to Perry) sprayed Perry a second time. Perry testified that police officers took him to a hospital for treatment after the incident. When asked during his testimony, "What were your injuries, if you know?" Perry replied, "A fractured right wrist." No evidence was offered from which the jury might have inferred that Perry had been treated for injuries resulting directly from the effects of the spray.

The question presented by Barrett's claim of error is "whether, after viewing the evidence [reviewed above] in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime [of assault and battery by means of a dangerous weapon] beyond a reasonable doubt" (emphasis in original). *Commonwealth* v. *Wilborne*, 382 Mass. 241, 244 (1981), quoting *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979), and cases cited. The defendant conceded at trial that the evidence introduced by the Commonwealth would be sufficient to sustain a verdict of guilty of assault and battery. See *Commonwealth* v. *Appleby*, 380 Mass. 296, 306-307 (1980). In this appeal, he argues only that the aerosol spray with which Perry testified he was blinded does not constitute, as a matter of law, a "dangerous weapon" for the purposes of G. L. c. 265, § 15A.

The defendant asserts, correctly, that the evidence presented was not sufficient to support a conclusion that the aerosol spray was a "dangerous weapon per se," i.e., "an instrumentality designed and constructed to produce death or great bodily harm." [10] *Commonwealth* v. *Appleby, supra* at 303. However, an instrumentality not dangerous when used for the purposes for which it was intended may become a dangerous weapon by the manner in which it is used. *Commonwealth* v. *Farrell*, 322 Mass. 606, 615 (1948). Viewed in the light most favorable to the prosecution, the evidence introduced at trial showed that Barrett sprayed Perry with a blinding liquid while Perry was driving a motor vehicle and, in fact, blinded Perry briefly. Regardless whether the spray, itself, was capable of inflicting death or great bodily harm, the spray clearly was used in a dangerous fashion in this instance. That the threatened harm might not result *directly* from the effects of the weapon on the victim is not material. It is enough that the spray,

---

[10] This appeal does not require us to decide whether the chemical Mace or similar chemicals constitute weapons "dangerous per se." But see *Commonwealth* v. *Sampson*, 383 Mass. 750, 758-759 & n.6 (1981).

as used, was capable of causing the driver of a moving vehicle to lose control of that vehicle. The issue whether the aerosol spray was a "dangerous weapon" under G. L. c. 265, § 15A, was properly presented to the jury. See *Commonwealth* v. *Farrell, supra.*

*Judgment of the Superior
Court affirmed.*