# United States Court of Appeals
## For the First Circuit

No. 15-1136

UNITED STATES OF AMERICA,

Appellee,

v.

JAMES DAWN,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge]

Before

Kayatta, Stahl, and Barron,
Circuit Judges.

Robert F. Hennessy and Thompson & Thompson, PC on brief, for appellant.
Mark T. Quinlivan, Assistant United States Attorney, and Carmen M. Ortiz, United States Attorney, on brief, for appellee.

November 16, 2016

**BARRON**, **Circuit Judge**. James Dawn appeals his convictions for federal firearms offenses on the ground that the District Court, in accepting his guilty pleas, did not conduct a proper inquiry under Rule 11 of the Federal Rules of Criminal Procedure. Dawn also appeals his sentence, arguing that the District Court erred in classifying him as an armed career criminal under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e). We affirm both the convictions and the sentence.

## I.

Dawn was indicted in March 2014 for dealing in firearms without a license, 18 U.S.C. § 922(a)(1)(A), and for being a felon in possession of a firearm and ammunition, 18 U.S.C. § 922(g)(1). He initially pled not guilty. In July, however, his counsel, Jaime Zambrana, informed the Magistrate Judge assigned to the case that Dawn intended to change his plea to guilty.

At the change of plea hearing in September, the District Court began by stating that "the purpose of this hearing is to satisfy me that what appears to be your intention to plead guilty is a knowing and voluntary act." The District Court then proceeded to ask Dawn a range of questions concerning his ability to understand the charges against him and to make a decision to plead guilty to them.

At the District Court's direction, the government informed Dawn that he could face a sentence of up to ten years for

the felon-in-possession charge, but if he were determined to be an "armed career criminal," he would face a maximum sentence of life imprisonment and a mandatory minimum sentence of fifteen years. That statement was a reference to the ACCA, 18 U.S.C. § 924(e), which applies if a defendant has three previous convictions for a "violent felony or a serious drug offense." The government also informed Dawn that he would face a sentence of up to five years for dealing in firearms without a license.

The District Court next asked Dawn, "So, you understand what the maximum penalties could be in this case, depending on how I resolve the factual matters here?" Dawn replied, "Yes, your Honor." The District Court then stated, "You understand that. So, what you are exposing yourself to is potentially those maximum penalties." Dawn replied, "Yes, your Honor." The District Court went on to describe the rights Dawn would be giving up by pleading guilty, discuss the evidence that could be presented at trial, and ask Dawn to enter a plea. The District Court concluded that Dawn's "decision to plead guilty is a knowing and voluntary act on [Dawn's] part."

Dawn then entered a guilty plea. After entering the guilty plea, Dawn's attorney, Zambrana, moved to continue the sentencing hearing. Zambrana stated that the government intended to seek a sentence under the ACCA. Zambrana alleged, incorrectly, that one of the predicate offenses that the government was relying

upon under the ACCA was Dawn's 2007 conviction for possession with intent to distribute a class D substance, in violation of Massachusetts General Laws Chapter 94C, § 32C. Zambrana requested more time to allow Dawn to seek to have this conviction vacated. That motion was heard at the beginning of the scheduled sentencing hearing.

At that hearing, Zambrana spoke in support of the motion to continue sentencing. Zambrana contended that he was in the process of challenging two of Dawn's prior state-law convictions that the government was asserting qualified Dawn as a career offender under the ACCA: first, the 2007 conviction referenced in the motion to continue sentencing, which was not actually classified as an ACCA predicate offense in the presentence report; and second, a conviction for trafficking cocaine, which was classified as an ACCA predicate offense in the presentence report. The District Court did not grant the requested continuance. The District Court explained that the convictions that Zambrana had identified in requesting the continuance were relatively old and that any success that his counsel had in having them vacated could be addressed in a post-sentencing motion pursuant to Rule 35 of the Federal Rules of Criminal Procedure.

The District Court took a brief recess so that Zambrana could explain to Dawn the process for challenging the sentence by filing a Rule 35 motion in the event that his challenges to any

- 4 -

prior state conviction on which the sentence relied were successful. After the recess, the District Court confirmed that Dawn had the opportunity to review the presentence report and did not object to it. The District Court sentenced Dawn to 180 months of imprisonment -- the mandatory minimum -- and 60 months of supervised release. This appeal followed.

## II.

Dawn challenges his convictions on the ground that the District Court failed to inquire at the Rule 11 hearing whether he was induced to plead guilty by way of any force, threats, or promises. See Fed. R. Crim. P. Rule 11(b)(2) (stating that "[b]efore accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises"). Because Dawn raises this issue for the first time on appeal, we review only for plain error. United States v. Ortiz-García, 665 F.3d 279, 285 (1st Cir. 2011). We find none.

"In order to establish plain error, a defendant must show that: (1) an error occurred; (2) the error was plain; (3) the error affected the defendant's substantial rights; and (4) the error 'seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings.'" Id. (quoting United States v. Rivera-Maldonado, 560 F.3d 16, 19 (1st Cir. 2009)). To satisfy the "substantial rights" prong of the test in this context, the

defendant must show "a reasonable probability that, but for the error, he would not have entered the plea."  Id. at 286 (quoting United States v. Dominguez Benitez, 542 U.S. 74, 76 (2004)).

Dawn contends that the purported Rule 11 violation was clear and obvious, and he contends that this error affected his substantial rights in the following way.  Dawn argues that if the District Court had inquired into whether Dawn's decision to plead guilty had been influenced by improper promises, Dawn would have disclosed Zambrana's "unfilled and unfulfillable promise to at least attempt to seek avoidance of the ACCA by collaterally attacking some of Dawn's prior convictions in state court."  Dawn contends that, following the disclosure of that "promise," the District Court would have clarified for Dawn that Zambrana's promise to challenge those convictions was an empty one because Zambrana in fact had promised to challenge a conviction that was not actually classified as an ACCA predicate.  And, further, Dawn contends, such a clarification by the District Court would have changed Dawn's expectation as to whether he would be subject to the ACCA enhancement and thus affected his decision to plead guilty.  Accordingly, Dawn contends that the District Court's alleged error in failing to inquire into whether any promises Dawn received affected his substantial rights.

There may be some question, as the government contends, as to whether the District Court's inquiry in this case was clearly

insufficient under Rule 11. See United States v. Henry, 113 F.3d 37, 41-42 (5th Cir. 1997). But even if we were to assume that the District Court did plainly err in not directly inquiring about whether Dawn's counsel made any promises, Dawn has not shown how, but for such an error, it is probable that he would not have pled guilty. Thus, he cannot satisfy the third prong of the plain error standard. See Dominguez Benitez, 542 U.S. at 76.

In this regard, we note that, to support his contention that Dawn's counsel made an unfulfillable promise to him that induced his plea, Dawn points only to his counsel's statements in the criminal proceedings themselves. And those statements, upon scrutiny, provide weak support for his contention.

The first statement Dawn points to is one that Zambrana made in a pretrial conference prior to the Rule 11 hearing. Zambrana stated that he was "looking into some of [Dawn's] prior convictions which have a significant impact on the Guidelines." But this statement is not itself a promise to Dawn by Zambrana, nor is it persuasive evidence that Zambrana made the unfulfillable promise that Dawn contends Zambrana had made and that Dawn argues is the kind of promise to which Rule 11 refers.

Dawn does point to two other statements Zambrana made, each of which post-dates the Rule 11 hearing itself. The first appears in Zambrana's motion to continue sentencing. The second was made by Zambrana to the court in the hearing on that motion.

But these statements are no more helpful to Dawn than the one just discussed. They, too, show merely that Zambrana was planning to file or had filed motions in state court to challenge certain of Dawn's prior convictions and thus that Zambrana was looking into Dawn's prior convictions. These statements do not show that Zambrana made the kind of promise to Dawn on which his Rule 11 challenge depends. Thus, Dawn has not shown that any inquiry by the District Court into the kind of promise to which Rule 11 refers actually would have uncovered that a promise of the type Dawn alleges was made in fact had been made.

Moreover, the government's evidence against Dawn was overwhelming, a point that Dawn does not at any point contest in his briefing to us. This feature of the case thus further undermines Dawn's contention that there is a reasonable probability that he would not have pled guilty but for the District Court's failure to conduct the inquiry under Rule 11 that he contends was required. See Dominguez Benitez, 542 U.S. at 85 ("Other matters that may be relevant . . . are the overall strength of the Government's case and any possible defenses . . . . [O]ne can fairly ask a defendant seeking to withdraw his plea what he might ever have thought he could gain by going to trial.").[1]

---

[1] At the Rule 11 hearing, the government discussed the evidence it would put forth if the case went to trial. The government stated that it would show that, on three separate occasions, cooperating witnesses purchased firearms from Dawn,

Dawn separately argues that the District Court erred in classifying him as a career offender under the ACCA. The ACCA provides a sentence of fifteen years if a defendant commits the offense of illegally possessing a firearm, in violation of 18 U.S.C. § 922(g), and qualifies as a career offender. 18 U.S.C. § 924(e)(1). A defendant qualifies as a career offender if the defendant has three predicate offenses. Id.

The presentence report listed four convictions that were claimed to qualify as ACCA predicate offenses: a conviction for assault and battery with a dangerous weapon, under Massachusetts General Laws Chapter 265, § 15A(b); a conviction for assault with a dangerous weapon, under Massachusetts General Laws Chapter 265, § 15B(b); and two different convictions for trafficking in cocaine, under Massachusetts General Laws Chapter 94C, § 32A. Dawn does not dispute that two of those convictions -- the convictions for trafficking in cocaine -- qualify as ACCA predicate offenses because they are serious drug offenses. See 18 U.S.C. § 924(e)(2)(A)(ii). He does, however, contend that neither of the other two -- namely, his convictions for assault and battery with a dangerous weapon and assault with a dangerous weapon -- qualifies as an ACCA predicate offense because he contends that neither is

---

with cash, while wearing recording devices. No possible defenses are apparent from the record, nor does Dawn identify any.

a violent felony under the ACCA.  The ACCA defines a "violent felony" as "any crime punishable by imprisonment for a term exceeding one year . . . that has as an element the use, attempted use, or threatened use of physical force against the person of another."  18 U.S.C. § 924(e)(2)(B).

We review de novo the classification of a prior offense as a violent felony under the ACCA.  United States v. Carrigan, 724 F.3d 39, 48 (1st Cir. 2013).  We have previously held that a conviction under Massachusetts law for assault with a dangerous weapon does qualify as a violent felony under 18 U.S.C. § 924(e).  United States v. Whindleton, 797 F.3d 105, 116 (1st Cir. 2015).  Dawn contends that Whindleton was wrongly decided in light of the Supreme Court's 2015 decision in Johnson v. United States, 135 S. Ct. 2551 (2015), and our decisions in United States v. Martinez, 762 F.3d 127 (1st Cir. 2014), and United States v. Fish, 758 F.3d 1 (1st Cir. 2014).  But we considered and rejected these same arguments in United States v. Fields, 823 F.3d 20, 35 & n.12 (1st Cir. 2016), and United States v. Hudson, 823 F.3d 11, 16-18 (1st Cir. 2016).  Because Dawn does not contest that there are two other qualifying predicate convictions, the government has identified three prior convictions that qualify as predicate offenses under the ACCA.  Accordingly, Dawn's challenge to his sentence fails.

## IV.

For the reasons given, we **affirm**.

- 10 -