# United States Court of Appeals
## For the First Circuit

No. 15-1874

UNITED STATES OF AMERICA,

Appellee,

v.

JAMES EDWARDS,
a/k/a Black,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, <u>U.S. District Judge</u>]

Before
Torruella, Thompson, and Kayatta,
<u>Circuit Judges</u>.

<u>Elizabeth Prevett</u>, Federal Public Defender Office, for appellant.

<u>Mark T. Quinlivan</u>, Assistant United States Attorney, with whom <u>Carmen M. Ortiz</u>, United States Attorney, was on brief, for appellee.

May 19, 2017

**THOMPSON**, <u>Circuit Judge</u>.

**Preface**

A person with three convictions for violent felonies or serious drug offenses who commits a federal firearms crime is an armed career criminal and must be sentenced to at least 15 years in prison — so says the Armed Career Criminal Act ("ACCA," for short). <u>See</u> 18 U.S.C. § 924(e). Under the governing rule, the government must prove the existence of the prior convictions by a preponderance of the evidence. <u>See</u> <u>United States</u> v. <u>Mulkern</u>, 854 F.3d 87, 90 (1st Cir. 2017); <u>see also</u> <u>United States</u> v. <u>Dancy</u>, 640 F.3d 455, 467 (1st Cir. 2011). The preponderance-of-the-evidence standard "is a more-likely-than-not rule." <u>Mulkern</u>, 854 F.3d at 90 n.2 (quoting <u>United States</u> v. <u>Vixamar</u>, 679 F.3d 22, 29 (1st Cir. 2012)).

Now meet James Edwards, the defendant in today's case. Edwards pled guilty — without a plea agreement — to a bunch of federal firearms offenses under 18 U.S.C. § 922(g).[1] These pleas added to his already long criminal record, which included Massachusetts convictions for (1) unarmed robbery, (2) assault

---

[1] Because Edwards's conviction resulted from a guilty plea, we draw the background info from the uncontested portions of the probation office's presentence report and the transcripts of the relevant court hearings. <u>See</u> <u>United States</u> v. <u>Hudson</u>, 823 F.3d 11, 13 n.1 (1st Cir. 2016).

with a dangerous weapon, (3) distribution of a controlled substance, and (4) armed assault with intent to murder. The district judge concluded that convictions (1) and (2) — unarmed robbery and assault with a dangerous weapon, respectively — are violent felonies. And Edwards conceded (then, as now) that conviction (3) — distribution of a controlled substance — is a serious drug offense. As for conviction 4 — armed assault with intent to murder — the judge thought it is not a violent felony because no binding caselaw directly holds that it is. So relying on convictions (1), (2), and (3), the judge deemed Edwards an armed career criminal and sentenced him to 15 years behind bars.

Unhappy with this outcome, Edwards appeals. But examining the matter afresh, see United States v. Dawn, 842 F.3d 3, 7 (1st Cir. 2016), we affirm — though our analysis differs in some respects from the judge's.

### Narrowing of the Issues

Edwards attacks his sentence on a variety of grounds, not all of which require extended discussion.

For example, Edwards insists that the judge blundered by "imposing sentence on the basis of prior convictions that were not included in the indictment, not admitted by [him], and not proven to a jury beyond a reasonable doubt." Recognizing that his argument runs smack into Almendarez-Torres v. United States, 523

- 3 -

U.S. 224, 226-27 (1998), a precedent we must apply until the Justices themselves say otherwise, he raises the issue only to preserve it for possible Supreme Court review. So we need say no more about that argument. And though he says that United States v. Whindleton, 797 F.3d 105, 114 (1st Cir. 2015), cert. dismissed, 137 S. Ct. 23 (2016), and cert. denied, 137 S. Ct. 179 (2016), holds that assault with a dangerous weapon in Massachusetts is a violent felony, he notes his objection to that holding simply to preserve it for possible further review. Enough said about that issue too. With two predicates properly counted — assault with a dangerous weapon (thanks to Whindleton) and distribution of a controlled substance (thanks to his concession) — Edwards is left to argue that neither the unarmed-robbery conviction nor the armed-assault-with-intent-to-murder conviction is a violent felony. And so, his argument continues, neither conviction can provide the necessary third predicate for his ACCA sentence. But because — for reasons shortly stated — we conclude that his armed-assault-with-intent-to-murder conviction does qualify as an ACCA predicate, we need not decide whether his unarmed-robbery conviction does as well.

On, then, to the armed-assault-with-intent-to-murder issue.

- 4 -

**Armed-Assault-with-Intent-to-Murder Conviction
as the Third ACCA Predicate**

*ACCA Basics*

Pertinently for Edwards's case, ACCA defines a "violent felony" as a crime punishable by a prison term "exceeding one year" that "has as an element the use, attempted use, or threatened use of physical force against the person of another," see 18 U.S.C. § 924(e)(2)(B)(i) — this is known as the elements clause.[2] And "'physical force,'" we know, means not simply what "force" means in physics, but "*violent* force — that is, force capable of causing physical pain or injury to another person." Johnson v. United States ("Johnson I"), 559 U.S. 133, 140 (2010).

In deciding whether the elements clause covers armed assault with intent to murder, we look only to the crime's statutory definition, not to Edwards's specific conduct — courts call that the "categorical approach." See, e.g., Mathis v. United

---

[2] ACCA's violent-felony definition also includes enumerated crimes — burglary, arson, extortion, and crimes involving the use of explosives — as well as crimes "otherwise involv[ing] conduct that presents a serious potential risk of physical injury to another." Id. § 924(e)(2)(B)(ii). Armed assault with intent to murder is not an enumerated offense. And the Supreme Court invalidated the "otherwise" clause (also known as the residual clause) in Johnson v. United States, 135 S. Ct. 2551, 2563 (2015) — a case commonly referred to as "Johnson II." That leaves us with ACCA's elements clause, as we noted above.

<u>States</u>, 136 S. Ct. 2243, 2248 (2016).[3]  And after figuring out the crime's definition, we must see whether "the minimum conduct criminalized" by the statute's elements matches ACCA's violent-felony definition, <u>see</u> <u>Moncrieffe</u> v. <u>Holder</u>, 133 S. Ct. 1678, 1684-85 (2013) — if there is no match, then the state conviction is not an ACCA predicate, <u>see</u> <u>Mathis</u>, 136 S. Ct. at 2248.  But — and it is an important "but" (as we shall see) — our minimum-conduct focus "is not an invitation to apply 'legal imagination' to the state offense; there must be 'a realistic probability, not a theoretical possibility, that [Massachusetts] would apply its statute to conduct that falls outside'" ACCA's violent-felony definition.  <u>See</u> <u>Moncrieffe</u>, 133 S. Ct. at 1684-85 (quoting <u>Gonzales</u> v. <u>Duenas-Alvarez</u>, 549 U.S. 183, 193 (2007)).[4]

*Statute of Conviction*

The relevant statute of conviction pertinently says that "[w]hoever, being armed with a dangerous weapon, assaults another

---

[3] <u>See generally</u> <u>McNeill</u> v. <u>United States</u>, 563 U.S. 816, 821 (2011) (adding that "when determining whether a defendant was convicted of a 'violent felony,' we . . . turn[] to the version of state law that the defendant was actually convicted of violating"); <u>Johnson I</u>, 559 U.S. at 138 (emphasizing that, in deciding whether a state conviction is a "violent felony," federal courts are "bound by the [state] Supreme Court's interpretation of state law, including its determination of the elements of" the statute of conviction).

[4] If the statute of conviction defines more than one crime by laying out "elements in the alternative," a court uses the so-called "modified categorical approach" to see which alternative

with intent to . . . murder shall be punished by imprisonment in the state prison for not more than twenty years." Mass. Gen. Laws ch. 265, § 18(b). According to Massachusetts's highest court — the Supreme Judicial Court — armed assault with an intent to murder requires "proof of assault (while armed with a dangerous weapon) and a specific intent to kill that equates with malice," with malice (in this context) meaning a lack of "'justification, excuse, or mitigation.'"[5] Commonwealth v. Vick, 910 N.E.2d 339, 350 (Mass. 2009) (quoting Commonwealth v. Johnston, 845 N.E.2d 350, 354 (Mass. 2006)). And, unsurprisingly, "an intent to kill may be inferred from the defendant's conduct," Commonwealth v. Henson, 476 N.E.2d 947, 952 (Mass. 1985), seen in light of the surrounding circumstances, see Commonwealth v. Lewis, 987 N.E.2d 1218, 1224 (Mass. 2013).

---

formed the basis of the prior conviction. See Mathis, 136 S. Ct. at 2249. This approach lets courts look at "a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." Id. No one has argued — and correctly so — that the modified-categorical approach applies here. So we need not address it.

[5] As far as the "armed with a dangerous weapon" part goes, the defendant need only have been "armed at the time of the assault; 'the weapon need not have been used.'" Commonwealth v. Bright, 974 N.E.2d 1092, 1113 (Mass. 2012) (quoting Salemme v. Commonwealth, 348 N.E.2d 799, 801 (Mass. 1976)).

*Parties' Positions*

The gist of the parties' arguments is easily stated.

Focusing on the word "assault" in the phrase "armed assault with intent to murder," Edwards correctly says that in Massachusetts a person can commit an assault in one of two ways — through an attempted battery or through an immediately threatened battery. See Whindleton, 797 F.3d at 112 & n.8 (citing and quoting Commonwealth v. Porro, 939 N.E.2d 1157, 1163 (Mass. 2010)). A battery, he rightly adds, is a harmful or offensive touching. See id. (citing and quoting Commonwealth v. Burke, 457 N.E.2d 622, 624 (Mass. 1983)). Relevantly for our purposes, we know that a harmful battery results from "[a]ny touching 'with such violence that bodily harm is likely to result,'" while an offensive battery results from an intentional, unconsented-to touching that is an "affront to the victim's personal integrity." Burke, 457 N.E.2d at 624 (quoting Commonwealth v. Farrell, 78 N.E.2d 697, 705 (Mass. 1948)); see also Commonwealth v. Eberhart, 965 N.E.2d 791, 798 (Mass. 2012). Now, an offensive touching, he further and again correctly notes, does not necessarily involve sufficient force under Johnson I, see United States v. Martinez, 762 F.3d 127, 137-38 (1st Cir. 2014) — remember, Johnson I says the type of "force" that comes within the elements clause is "force capable of causing physical pain or injury to another person," see 559 U.S. at 140.

- 8 -

Putting this all together, he insists that because a person may be convicted of armed assault with intent to murder under the offensive-touching branch of assault, the conviction is not a predicate violent felony under ACCA's elements clause.

For its part, the government rightly points out that (we quote from its brief) "[t]he crime of armed assault with intent to murder adds the additional elements that a defendant be armed and have a specific intent to kill that equates with malice." And these "additional elements," the government continues, "negate the possibility that a defendant might be convicted of armed assault with the intent to murder that involves a mere attempted or threatened offensive touching." So according to the government, Edwards's armed-assault-with-intent-to-murder conviction is a predicate violent felony under ACCA's elements clause.

*Our Take*

We believe the government has the better of this debate. Yes, as Edwards argues, someone can commit the Massachusetts crime of simple assault with offensive touching — the prototypical examples being spitting on the victim, see Commonwealth v. Cohen, 771 N.E.2d 176, 178 (Mass. App. Ct. 2002), tickling her, see Commonwealth v. Hartnett, 892 N.E.2d 805, 814 (Mass. App. Ct. 2008), or physically moving her to another room, see Parreira v. Commonwealth, 971 N.E.2d 242, 247 (Mass. 2012). And yes, as he

- 9 -

also notes, offensive touching fails the force requirement sketched in Johnson I. See Whindleton, 797 F.3d at 113-14 (discussing Martinez, 762 F.3d at 137-38). But we cannot accept the next part of his argument — that because the armed-assault-with-intent-to-murder statute has assault as an element and because someone can commit an assault without the sort of "violent force" required by Johnson I, a conviction under that statute cannot be an ACCA predicate. For doing so would require us to read the state statute with blinders on. And that we cannot do — in seeing if a crime involves the use, attempted use, or threatened use of (in Johnson I's words) "force capable of causing physical pain or injury to another person," we must focus not just on *one* element — here, assault — but on *all* elements. See id.

Recall how the at-issue statute outlaws (emphases ours) "assault[] . . . *with intent to . . . murder*" while armed "with a dangerous weapon," see Mass. Gen. Laws ch. 265, § 18(b) — *i.e.*, the defendant must have acted with "a *specific intent to kill* that equates with malice," see Vick, 910 N.E.2d at 350. Well, to our way of thinking, an assault committed with an intent to murder the victim becomes an attempted or threatened harmful battery — and thus an ACCA violent felony — because of the presence of that intent. A battery, in other words, could be merely offensive and

not involve violent force if committed without murderous intent —

but harmful if committed with murderous intent.[6]

The bottom line is — as the government convincingly argues — that the intent-to-murder element makes it implausible that a defendant could be convicted under this statute based on an offensive-touching approach. Still hoping to convince us otherwise, Edwards speculates that an armed-assault-with-intent-to-murder conviction "based on a threatened or attempted offensive touching theory" actually "is []conceivable." His argument — as we understand it — rests on the idea that a person can cause physical injury without using physical force in the ACCA sense. He offers two supposed examples. One involves a person who "attempt[s] to insert a poison pill into the mouth of a sleeping hospital patient" without ever touching the patient. The other involves "an attempted lethal spray with poison." Causing harm "indirectly" like that, he writes, "can show intent to murder but does not constitute violent force." And looking to give his position a patina of plausibility, he drops a "cf." citation to three assault-and-battery-by-means-of-a-dangerous-weapon cases

_____

[6] Edwards does not make — and so has waived — any argument that armed assault with intent to murder is not a violent felony because there may be cases where it is factually impossible for the attempted or threatened battery to cause death. See Rodriguez v. Municipality of San Juan, 659 F.3d 168, 175 (1st Cir. 2011) (emphasizing that "we deem waived" arguments "not made").

- 11 -

that allegedly support his view that one could conceivably be convicted of armed assault with intent to murder on an offensive-touching theory:  Commonwealth v. Barrett, 436 N.E.2d 1219 (Mass. 1982), Commonwealth v. Vonberg, No. 06-P-1627, 2007 WL 4097332 (Mass. App. Ct. Nov. 16, 2007) (unpublished table disposition), and Commonwealth v. Lord, 770 N.E.2d 520 (Mass. App. Ct. 2002).[7] The Barrett defendant, you should know, sprayed his victim "in the face with a liquid from an aerosol can."  436 N.E.2d at 1221.  The Vonberg defendant sprayed his victim "in the face with WD-40." 2007 WL 4097332, at *1.  And the Lord defendant sprayed his victim "in the face with mace."  770 N.E.2d at 522.[8]

We are unmoved.  To the extent Edwards thinks knowingly using poison to cause physical harm is not a use of physical force,

---

[7] For anyone unfamiliar with legal-citation lingo, "cf." means the writer believes the "[c]ited authority supports a proposition different from the main proposition" but thinks it is "sufficiently analogous to lend support."  See The Bluebook:  A Uniform System of Citation 59 (Columbia Law Review Ass'n et al. eds., 20th ed. 2015).

[8] On appeal, none of the defendants disputed that an assault and battery had occurred.  See Barrett, 436 N.E.2d at 1223; Vonberg, 2007 WL 4097332, at *1; Lord, 770 N.E.2d at 523-26. Instead, they protested that their spraying devices were not "dangerous weapon[s]," see Barrett, 436 N.E.2d at 1223; see also Vonberg, 2007 WL 4097332, at *2-3; Lord, 770 N.E.2d at 524-25 — with "dangerous weapon" defined either as (a) an inherently dangerous item, i.e., an item "designed and constructed to produce death or great bodily injury," see Barrett, 436 N.E.2d at 1223 (quoting Commonwealth v. Appleby, 402 N.E.2d 1051, 1056 (Mass. 1980)), or as (b) a harmless item that is "capable of producing serious bodily harm" by the way it is used, see Commonwealth v.

- 12 -

Supreme Court caselaw suggests the opposite. Construing a provision banning persons previously convicted of "misdemeanor crime[s] of domestic violence" from possessing firearms, the high Court said physical force "encompasses even its indirect application," like when a poisoner drops poison in a person's drink. See United States v. Castleman, 134 S. Ct. 1405, 1414-15 (2014) (discussing 18 U.S.C. § 922(g)(9)).[9] "The 'use of force'" in the poison example, our judicial superiors explained, "is the act of employing poison knowingly as a device to cause physical harm." Castleman, 134 S. Ct. at 1415. So it matters not one bit "[t]hat the harm occurs indirectly, rather than directly (as with a kick or punch)" — if it were otherwise, "one could say that pulling the trigger on a gun" involves no "'use of force' because it is the bullet, not the trigger, that actually strikes the victim," an argument that would be an absurdity. See id.

---

Tevlin, 741 N.E.2d 827, 833 (Mass 2001) (quoting Commonwealth v. Mercado, 509 N.E.2d 1356, 1358 (Mass. App. Ct. 1987) (rescript)).

[9] A misdemeanor crime of domestic violence is

an offense that . . . has, as an element, the use or attempted use of physical force . . . committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim.

18 U.S.C. § 921(a)(33)(A)(ii).

- 13 -

The parties argue over whether this aspect of Castleman's physical-force analysis applies equally to ACCA's physical-force requirement.[10]  We need not take sides.[11]  Our reasons are twofold.

---

[10] Edwards, for example, cites to United States v. Rico-Mejia, 853 F.3d 731, 735-36 (5th Cir. 2017), which held that "Castleman's analysis is applicable only to crimes categorized as domestic violence."  Responding to Edwards, the government writes that "Castleman distinguished the requisite *degree* of force required for a 'misdemeanor crime of domestic violence' from that required for a 'violent felony'" — an offensive touching satisfies § 921(a)(33)(A)(ii)'s physical-force requirement but not § 924(e)(2)(B)(i)'s, Castleman holds.  See 134 S. Ct. at 1410-13 (distinguishing Johnson I).  But, the government adds, Castleman "made no similar distinction about the *manner* in which physical force may be employed" — so, as the government sees it, Castleman's conclusion that force can be applied both directly and indirectly still controls here.  For support, the government cites to United States v. Hill, 832 F.3d 135, 143 (2d Cir. 2016) (applying Castleman's direct/indirect-causes analysis outside the misdemeanor-crime-of-domestic-violence context), and United States v. Haldemann, 664 F. App'x 820, 821 (11th Cir. 2016) (per curiam) (same).

[11] Relying on Whyte v. Lynch, 807 F.3d 463 (1st Cir. 2015), Edwards intimates that we have already taken Castleman's poison/indirect-causes comment and limited its applicability to the misdemeanor-crime-of-domestic-violence context.  Not so.  Whyte noted Castleman's holding — which we mentioned in our tenth footnote — that the physical-force clause at issue there did not have same meaning as the physical-force clause at issue in Johnson I.  See 807 F.3d at 470-71.  Following our opinion in Whyte, the government petitioned for panel rehearing, arguing that the reach of Castleman's indirect-causes analysis extended beyond the facts of that case.  But because the government débuted this argument in its rehearing petition, we said that "[f]or purposes of this case only, it is waived."  See Whyte v. Lynch, 815 F.3d 92, 92 (1st Cir. 2016) (order denying rehearing petition).  So Edwards is wrong to suggest that Whyte forecloses the government's  argument.

For one thing, Edwards is dead wrong in characterizing the poisoning as an application of indirect force. The Barrett, Vonberg, and Lord defendants directly administered the noxious substance to the victim by spraying it in the victim's face. And the application of poison in this way is a direct application of force. That poison causes harm in a different way than, say, a bullet does not mean the application is indirect. Edwards might possibly be understood to argue that the velocity of the harmful substance is somehow relevant to the violent-force analysis. To the extent he does, we see no case support for that idea. Johnson I did not require that a harmful substance be moving at a certain velocity to qualify as violent force, but that it be "capable of causing physical pain or injury to another person." See 559 U.S. at 140. The force required to apply poison to a victim — while certainly lower in newtons than the force of a bullet — is still force with just that capability.

For another thing, nothing in Barrett, Vonberg, and Lord suggests the defendants there assaulted the victims with murderous intent. Again, each defendant committed an assault by means of a dangerous weapon, which, unlike armed assault with intent to murder, does not "require[] a showing of a specific intent to kill." See Bright, 974 N.E.2d at 1113. Given how assault and battery by means of a dangerous weapon and armed assault with

- 15 -

intent to murder involve different types of intent, the relevance of <u>Barrett</u>, <u>Vonberg</u>, and <u>Lord</u> to Edwards's situation escapes us.[12] What this means is that we see no realistic probability of Massachusetts convicting someone of armed assault with intent to murder who had not used, attempted, or threatened "force capable of causing physical pain or injury to another person," <u>see</u> <u>Johnson I</u>, 559 U.S. at 140 — the possibility Edwards pushes falls under the heading of imaginative thinking, which the Supreme Court has told us not to rely on in applying the categorical approach, <u>see</u> <u>Moncrieffe</u>, 133 S. Ct. at 1684-85.

With that and at long last, we hold that Edwards's armed-assault-with-intent-to-murder conviction counts as his third ACCA predicate.

**Final Words**

For the reasons record above, we **_affirm_** the sentence imposed below.

---

[12] We note for what it is worth that assault and battery by means of a dangerous weapon — the crime involved in <u>Barrett</u>, <u>Vonberg</u>, and <u>Lord</u> — is an ACCA violent felony if done intentionally: because that crime must be committed with a weapon capable of causing serious bodily injury or death, even "a mere touching with a dangerous weapon constitute[s] an attempted or threatened use of physical force," we have held. <u>See</u> <u>United States</u> v. <u>Tavares</u>, 843 F.3d 1, 13 (1st Cir. 2016); <u>see also</u> <u>Whindleton</u>, 797 F.3d at 115 (stressing that the use of such a weapon can "'transform a lesser degree of force into the necessary "violent force"'" (quoting <u>United States</u> v. <u>Rede-Mendez</u>, 680 F.3d 552, 558 (6th Cir. 2012))).